# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

Mr. Adam F. Wasserman, Esquire
Ciconte Wasserman & Scerba, LLC
1300 King Street
Wilmington, DE 19801

Mr. Gary E. Junge, Esquire
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, DE 19901

Submitted:  March 23, 2024
Decided     June 18, 2024

**RE:  *Dealer Services Corporation v. Kirk D. Albertson, K23J-01105***

Counsel:

Judgment-Creditor Dealer Services Corporation ("Dealer Services'") transferred an Indiana judgment to Kent County Superior Court.  It obtained the judgment by default in Indiana on April 23, 2010, and then filed it in Delaware on November 21, 2023.  Dealer Services has taken no action to execute upon the judgment since its entry.  Nor has it taken action to refresh or revive the fourteen-year-old judgment at any point.

Mr. Albertson moves to vacate the judgment on three bases.  He contends that (1) Dealer Services never properly served him in the underlying action, (2) Dealer Services failed to refresh or revive the by-then-dormant judgment before filing it in

Delaware, which in turn, makes it unenforceable in Delaware, and (3) the guaranty that formed the basis for the underlying judgment was unenforceable.

For the reasons discussed below, Delaware's Foreign Judgment Act, 10 *Del. C.* Ch. 47, requires the Court to treat Dealer Service's domesticated judgment in the same manner as it would a Superior Court judgment. As a result, that judgment is enforceable in Delaware. Even though the judgment was already dormant in Indiana before Dealer Services transferred it to Delaware, the judgment qualified for transfer because it remained a valid judgment.

Nevertheless, given the judgment's dormancy, Dealer Services may not execute on the judgment or benefit from a judgment lien without first obtaining court approval. The requirement for Dealer Services to seek revival of the judgment after fourteen years of inactivity treats the transferred judgment in the same manner as an original judgment entered in the Delaware Superior Court.

## BACKGROUND

Dealer Services obtained a default judgment against Mr. Albertson in Indiana in the amount of $25,350.52, plus post-judgment interest at the rate of eight percent per annum, and costs.[1] Mr. Albertson has resided in Delaware at the same address for more than thirty years.[2] Nevertheless, he consented to Indiana jurisdiction when he executed a personal guaranty that formed the basis for his personal liability.[3]

Marion County Superior Court in Indiana entered the judgment on April 23, 2010.[4] The court's order included the following findings: (1) Dealer Service properly served Mr. Albertson;[5] (2) Mr. Albertson failed to answer or respond to the

---

[1] D.I. 1.

[2] Mot. to Vacate Default J. (D.I. 3) at ¶ 2(d)–(e).

[3] D.I. 5, Ex. A at ¶ 21, and Ex. B at ¶ 13.

[4] D.I. 1.

[5] *Id.* ¶ 1.

complaint;[6] and (3) Dealer Services was entitled to a judgment by default in an amount certain.[7]  Furthermore, of the three defendants in the underlying action, the Indiana court's docket records that one defendant was properly served.[8]  The Indiana docket sheet further reflects that Dealer Services obtained a default judgment against only one of the defendants, Mr. Albertson.[9]

On November 18, 2023, Dealer Services filed the judgment in the Office of the Kent County Prothonotary (hereafter the "transferred judgment" or the "domesticated judgment") which was more than thirteen years after the Indiana court entered the judgment.[10]  Through the present, Dealer Services has yet to attempt to execute on it.  Now, Mr. Albertson moves to vacate the judgment for several reasons.  The weightiest two of which include his allegation that he received no notice of the underlying suit or judgment, and that Dealer Services failed to execute on the judgment during the thirteen years that proceeded the transfer.[11]

## ARGUMENTS OF THE PARTIES

Mr. Albertson contends that the underlying judgment is void because Dealer Services did not properly serve him in the Indiana action.[12]  Furthermore, he stresses that Dealer Services (1) failed to refresh the judgment in Indiana within ten years as required by Indiana statute, and (2) did not revive the judgment at any point after those ten years expired.[13]  Given those alleged failures, he contends that the domesticated judgment in Delaware should be vacated.[14]  He also relies upon Indiana case law and an Indiana statute that recognizes that an Indiana judgment lien expires

---

[6] *Id.* ¶ 2
[7] *Id.* ¶ 5(a).
[8] D.I. 15, Ex. A at 2.
[9] *Id.*
[10] D.I. 1.
[11] D.I. 3.
[12] *Id.* ¶¶9–10.
[13] D.I. 17 at 3.
[14] *Id.* at 2–3.

after ten years unless a creditor refreshes or revives it.[15] That, he contends, required Dealer Services to renew the judgment in Indiana before it could lawfully domesticate it in Delaware.[16] Finally, Mr. Albertson contends that the personal guaranty that Dealer Services relied on in the underlying suit was unenforceable against him.[17]

Dealer Services responds first to Mr. Albertson's challenge regarding proper service. When doing so, it emphasizes that the Indiana Court that entered the judgment expressly found that he was properly served.[18] Dealer Services further contends that when it domesticated the judgment in Delaware in November 2023, the filing converted the domesticated judgment to a *new* judgment under 10 *Del. C.* §4782.[19] That, Dealer Services contends, reset the judgment clock to Day 1, making the judgment enforceable in Delaware for at least another twenty years.[20] Finally, Dealer Services emphasizes that because Mr. Albertson consented to Indiana jurisdiction through his personal guaranty of the underlying note, he cannot now collaterally attack the judgment in Delaware based upon the suit's underlying merits.[21]

**CONTROLLING JUDGMENT AND EXECUTION LAW**

The (1) enforceability of this domesticated judgment, (2) Dealer Services' ability to execute on that judgment, and (3) Dealer Services' ability to benefit from a judgment lien on real estate depend upon 10 *Del. C.* §4782 ("Section 4782"). Section 4782 provides, in part, the following:

---

[15] *Id.* at 1–4 (first citing Ind. Code § 34-55-9-2; then citing *Chitwood*, 230 N.E. 3d at 938–939; and then citing Ind. Code § 34-11-2-12).

[16] D.I. 17 at 3.

[17] *Id.* at 4–6.

[18] D.I. 18 at 5.

[19] *Id.* at 3.

[20] *Id.*

[21] D.I. 5 ¶¶ 6–8.

[a] copy of any foreign judgment authenticated . . . may be filed in the office of any prothonotary of this State. The prothonotary shall treat the foreign judgment in the same manner as a judgment of the Superior Court of this State. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating[,] or staying, as a judgment of the Superior Court of this State and may be enforced or satisfied in like manner.[22]

In addition to Section 4782, the Court must consider Indiana and Delaware judgment law when determining the parties' rights. In Indiana, a judgment remains enforceable until it expires twenty years after entry.[23] That is important because if the Indiana judgment was invalid and unenforceable before Dealer Services attempted its transfer to Delaware, there would have been no judgment to transfer.[24] Furthermore, both states' statutes require a judgment-creditor, such as Dealer Services, to renew a judgment lien on real estate within ten years of the date of entry of judgment.[25] In Indiana, if ten years have expired without renewal or revival, the judgment-creditor must seek leave of court to revive the judgement lien before executing upon real estate in Indiana.[26] Likewise, in Delaware, a judgment lien that has expired (without being refreshed prior to the date of expiration) may be revived

---

[22] 10 *Del. C.* § 4782.

[23] *See* Ind. Code § 34-11-2-12 (providing that Indiana judgments cannot be considered satisfied until after twenty years); *see also Chitwood v. Guadagnoli*, 230 N.E. 3d 932, 938 (Ind. Ct. App. 2024) (recognizing that, in Indiana, the judgment continues to exist for ten years *after* the lien expires).

[24] *See State v. Kamalski*, 429 A.2d 1315, 1320 (explaining that an attack on the validity of a judgment in a collateral proceeding is only allowed where the judgment is void because it was rendered without jurisdiction); *see also* 50 C.J.S. *Judgments* § 693 (2024) ("[A] party cannot collaterally attack a court's final judgment over which the court had subject-matter jurisdiction merely because the party believes the judgment was wrong. … [However, a] judgment that is void … is subject to collateral attack at any time[.]").

[25] *Compare* Ind. Code § 34-55-1-2 *with* 10 *Del. C.* § 4711(b).

[26] *See Chitwood*, 230 N.E.3d at 938 ("Although a judgment lien expires after ten years, a judgment still exists for at least another ten years. … During the eleventh through twentieth year after judgment, no lien exists as to the debtor's real estate. However, with the permission of the trial court, execution against real estate may still issue, albeit without the benefit of a judgment lien.").

only upon a proceeding in scire facias pursuant to 10 *Del. C.* § 4711 ("Section 4711").[27]

Finally, apart from a judgment lien's expiration after ten years, there is a separate timeframe applicable to executions under Delaware law under 10 *Del. C.* § 5072 ("Section 5072"). Namely, Section 5072 requires that a judgment-creditor begin execution efforts within five years of a judgment or seek approval from the Court to renew the ability to do so if she has not.[28]

The expiration of these time limits, however, do not invalidate the judgment. On the contrary, the transferred judgment remains fully enforceable for at least twenty years in Delaware.[29] The judgment is considered "dormant" after either time

---

[27] 10 *Del. C.* § 4711(a); *see also Citizens Sav. Bank v. Astrin*, 61 A.2d 419, 453 (Del. Super. Sept. 15, 1948) (recognizing that "[a]fter the expiration of ten years, [a] lien can only be renewed (in the sense of being revived) by scire facias sur judgment. … The new proceeding establishes no new debt or obligation … it simply revives or reestablishes the right of the plaintiff to sue out execution for purposes of collecting the debt evidenced by the old judgment.").

[28] 10 *Del. C.* §§ 5071–72. Notably, this five-year window for execution applies to "judgements in a personal, or mixed action, as well as upon a judgment in a real action[.]" *Id.* at § 5071. Accordingly, while a judgment lien remains for ten years, execution on that judgment must take place within five years. If not, dependent upon the nature of the judgment, the creditor must either move to revive the execution-period by motion, in the context of transferred Court of Common Pleas or Justice of the Peace Court judgments, or through a scire facias proceeding in other contexts. *Knott v. LVNV Funding, LLC*, 95 A.3d 13, 20 (Del. 2014) ("Because § 5072 is silent as to the procedure that the judgment credit must follow [when executing upon transferred judgments other than those originating in the Court of Common Plea, Superior Court Civil Rule 64.1 … allows judgment creditors to proceed by motion to refresh the judgment."); *Delmarva Auto Fin. Serv. v. White*, 100 A.3d 1059, (holding that for judgments transferred from the Court of Common Pleas or Justice of the Peace Court, "a writ of scire facias is required … if more than five years have passed and the creditor has not previously executed upon judgment.") (Del. Super. Aug. 15, 2014); *Evans v. G-33*, Inc., SS08J-03-068 & *Delaware Acceptance Corp. v. Schatzman*, S10J-03-032, at * 13.(Del. Super. June 1, 2017) (Letter Op.) [hereinafter the *Schatzman* letter] (explaining that after the expiration of the five-year window imposed by 10 *Del. C.* §§ 5072 and 5073, a judgment creditor must seek to revive the unsatisfied judgment before he or she may execute on it, notwithstanding the survival of the judgment lien until ten years have passed), *aff'd*, 179 A.3d 822, 2018 WL 526596 (Del. 2018) (TABLE).

[29] *See Knott*, 95 A.3d at 19 ("Delaware does not have a statute of limitations on judgments, but only a rebuttable common law presumption of payment after twenty years.") (citing *Guayaquil & Quito Ry. Co. v. Suydam Hldg. Co.*, 132 A.2d 60, 66 (Del. 1957).

limit expires.[30]  In that event, one cannot execute on the judgment or alternatively benefit from a judgment lien on real estate before first reviving it.[31]

Accordingly, in some cases, a scire facias proceeding is necessary to simultaneously address a more than five-year delay in execution and the expiration of a judgment-lien after ten years.[32]  Upon a judgment-creditor's motion for a scire facias proceeding, the judgment-debtor must appear and show cause why the dormant judgment should not be revived.[33]  Defenses in a scire facias proceeding are limited and do not include defenses on the merits that could have been raised in the court that entered the judgment.[34]  As a result, in a rule to show cause proceeding, the judgment-debtor may not challenge the merits of the original action.[35]  But, she may, for instance, assert payment as  a defense or separately request relief of interest obligations if the judgment-creditor was dilatory in his efforts to execute.[36]

## ANALYSIS

In this case, the certified copy of the Indiana Court's decision granting Dealer Services' default judgment resolves the sufficiency of service issue because the record (1) confirms that Mr. Albertson received sufficient service under Indiana law,

---

[30] *See* 47 AM. JUR. 2D *Judgments* § 364 (2017) (explaining that a judgment becomes *dormant* if its statute of limitations has not yet run, and in that event, a lien cannot be enforced or the judgment executed upon unless the judgment holder takes the necessary steps to revive the judgment).

[31] *Id.*

[32] *Schatzman* letter at *13.

[33] *Id*. at § 387.

[34] *Id.* at § 394.

[35] *Id.*

[36] *See Knott*, 95 A.3d at 9 (recognizing that the Court has the discretion to deny permitting execution "if a creditor has not acted with diligence or there is some basis for concluding that continued enforcement of the judgment would be inequitable."); *see also De Ford v. Green*, 40 A. 1120, 1122 (Del. Super. Nov. 1, 1894) ( recognizing that payment or partial payment may be raised as a defense upon scire facias); *see Frankel v. Satterfield,* 19 A. 898 (Del. Super. May 1, 1890) (recognizing that the underlying jurisdiction for entry of the judgment may be challenged upon scire facias); *G. Murray Derrington PCF Mgmt. v. Wedin*, 2010 WL 774177, at *2 (declining to permit the recovery of post-judgment interest upon revival of a judgment lien that expired because of an inordinate delay in execution).

while (2) containing nothing to contradict that finding. To this end, Section 4782 permits a judgment-debtor to challenge a foreign judgment based upon the same "defenses and proceedings for reopening" a Delaware-originating judgment.[37] The United States Constitution requires the Court to give full faith and credit to the judgment of a sister state's court if that judgment is regular and complete on its face.[38] A court cannot consider a collateral attack to vacate a judgment that the record demonstrates to be lawful. This premise applies regardless of whether the transferred judgment originated from a sister court in Delaware or from a court of competent jurisdiction in another state.[39]

Here, the record contains a certified copy of the Indiana court's order. The order includes the following finding: "Albertson was properly served in the Cause."[40] In addition to this entry, the record contains a docket entry confirming service by certified mail upon one of the three individual defendants. The Indiana court then entered a default judgment, including the finding of proper service, against one of those defendants – Mr. Albertson. The record further contains a certificate of service confirming that the creditor's counsel sent Mr. Albertson notice of the default judgment motion to Mr. Albertson's Delaware address. There is nothing on the face of the record to contradict the Indiana court's finding regarding proper service. Nor does Mr. Alberton's insistence on reviewing proof of service,

---

[37] 10 *Del. C.* § 4782.

[38] U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. ").

[39] *Underwriters Nat. Assur. Co. v. N.C. Life and Acc. And Health Ins. Guaranty Ass'n*, 455 U.S. 691, 704 (1982) ("This Court has consistently recognized that … the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced.'") (quoting *Hampton v. McConnel*, 16 U.S. 234, 235 (1818)).

[40] D.I. 1 ¶ 1. The certificate of service attached to Dealer Services' motion for entry of default judgment provides record evidence that Mr. Albertson had notice of the default judgment motion. D.I. 16.

via a green card, demonstrate a face-of-the-record contradiction to the Indiana court's finding. This Court may not collaterally vacate the originating court's order absent at least some indication on the face of the record that Dealer Services failed to properly serve him or to provide him notice. In the absence of such a record infirmity, his motion to vacate must be denied on that basis.

Likewise, this Court is not free to consider the merits of Dealer Services' underlying action or to freshly litigate whether the Indiana court properly entered a judgment based upon Mr. Albertson's personal guaranty. The Indiana court's judgment deserves res judicata effect in this Court.[41] For that reason, Mr. Albertson would need to move to reopen the judgment in Indiana to challenge the merits of the underlying case. Granted, this Court would have the discretion to stay execution of a judgment in Delaware to permit reasonable time to permit a debtor to raise such a challenge in the original jurisdiction.[42] But, the Court cannot try in Delaware what was not tried in Indiana.

The Court next considers the effect of Dealer Services' delay in executing on the judgment. On that point, for three reasons Mr. Albertson incorrectly contends that its dormancy makes Dealer Services' judgment unenforceable. First, the plain language of Section 4782 controls and provides that the transferred judgment has the "same effect and is subject to the same procedures" as a judgment of the Delaware Superior Court.[43] As explained above, the Indiana judgment remained enforceable, despite its dormancy, for twenty years.[44] Under Delaware law, neither the fourteen-

---

[41] *See Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1244, 1217 (Del. 1991) (recognizing that "the doctrines of res judicata and collateral estoppel require that the same effect be given a [foreign] judgment rendered upon adequate jurisdiction as the [foreign court] itself would accord such a judgment.") (quoting *Bata v. Hill*, 139 A.2d 159, 165 (Del. Ch. 1958), *modified sub nom., Bata v. Bata*, 163 A.2d 493 (1960).

[42] *Worthington Homeowners Ass'n v. Couch*, 2022 WL 33283, at *2 (Del. Super. Feb. 4, 2022).

[43] 10 *Del. C.* § 4782.

[44] *Chitwood*, 230 N.E.3d at 938.

9

year delay in execution, nor the expiration of the judgment lien make the judgment unenforceable.  Rather, a Delaware judgment remains enforceable for at least twenty years after which point there is a rebuttable presumption of payment.[45]  Here, the domesticated judgment remains enforceable because it must be treated as a judgment of this Court subject to the same processes and defenses as would a Delaware Superior Court judgment.

Second, Dealer Services identifies significant extra-jurisdictional authority that interprets foreign judgment acts that are identical in substance to Section 4782.[46] Those decisions recognize that a transferred judgment becomes a new judgment for purposes of determining enforceability.[47]  To that end, the decisions are directly on point and persuasive.  Namely, they recognize that a judgment survives the expiration of a judgment lien because that lien, by definition, may be revived with court approval.[48]

Third and finally, Mr. Albertson cites no authority to supports his contention that the expiration of the ten-year judgment lien in Indiana impaired Dealer Services'

---

[45] *Knott*, 95 A.3d at 19.

[46] D.I. 18 at 2–3.

[47] *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237, 245 (4th Cir. 2016) (recognizing that a transferred judgment resets the statute of limitations on a judgment at day one); *Pan Energy v. Martin*, 813 P.2d 1142, 1145 (Utah 1991) (holding that as long as the judgment remained enforceable in the originating jurisdiction at the time of transfer, Utah's eight year statute of limitations for enforceability reset as if it were a new judgment).  Notably, these decisions do not address judgment *dormancy*.  They involve "active" judgements that were transferred to the receiving jurisdiction before expiration of the judgment lien.   For that reason, while supporting Dealer Services' contention that its judgment remains enforceable, they do not support that Dealer Services can either execute or receive the benefit of a judgment lien on what is, in fact, a fourteen-year-old judgment, without first reviving the judgment and the ability to execute on that judgment in this Court.

[48] *Compare* Ind. Code § 34-55-1-2 ("After  the lapse of ten (10) years after: (1) the entry of judgment; or (2) issuing of an execution; and execution can only be issued on leave of the court[.]") *with* 10 *Del. C.* § 4711(b) ("No judgment which is a general lien … shall remain a lien for more than the 10-year period hereinabove provided, unless renewed for a further 10-year term in accordance with the provisions of this section.").

ability to transfer the judgment to Delaware. Again, the original judgment in Indiana survives for at-least twenty years and has remained a "judgment" throughout. Section 4782 permits the transfer of "any foreign judgment."[49] Accordingly, the transfer of the Indiana judgment to Delaware, despite its then-dormant status in Indiana, results in an enforceable domesticated judgment in Delaware.

As a final matter, the parties spent significant effort addressing the importance of expiring judgment liens upon real estate in both Indiana and Delaware. To that point, Section 4782 *does not directly address* issues of dormancy, refreshment, or revival of a five-year execution period or a ten-year judgment lien. Section 4782's requirement that the Court apply the same processes and defenses to a domesticated judgment as it would a judgment of the Superior Court becomes important, however.[50] Although the judgment's dormancy does not impact enforceability, its dormancy may still have a practical effect on execution because either a scire facias proceeding or a motion to revive becomes necessary before Dealer Services can pursue collection efforts.[51]

On balance, Dealer Services identifies no authority to support the contention that either (1) the expiration of the five-year execution period provided by Section

---

[49] 10 *Del. C.* § 4782 ("A copy of *any foreign judgment* … may be filed in the office of any prothonotary of this State.").

[50] See *id.* ("A [foreign] judgment … is subject to the same procedures, defenses, and proceedings . . . as a judgment of the Superior Court . . . and may be enforced . . .. in like manner.").

[51] The parties did not address Section 5072's five-year expiration on a judgment-creditor's ability to execute on a judgment; rather, they focused on the expiration of the ten-year period set by Section 4711. Separately from Section 4711, (1) Section 5072 requires a motion to revive the ability to execute upon a Superior Court judgment, and (2) Section 5073 requires a scire facias proceeding to revive the ability to execute upon transferred judgments from the Court of Common Pleas and the Justice of the Peace Court. Here, the judgment must be treated as on one originating in the Superior Court. That would permit a judgment-creditor to revive its ability to execute by motion. Nevertheless, it seems likely that a combined scire facias proceeding could sufficiently address both Dealer Services' efforts to execute and request to revive a judgment lien. That procedure would concomitantly permit the Court to consider Mr. Albertson's defenses, including prejudice caused by the fourteen-year delay, without the need for a bifurcated pleading.

11

5072, or (2) the ten-year judgment lien provided by Section 4711 are reset upon domestication in this case– that is, a case *where the judgment became dormant in Indiana before the transfer.* In fairness and pursuant to Section 4782's direction to treat  domesticated judgments as any other judgment of this Court, Dealer Services must revive its judgment lien and the ability to execute on it given the now-fourteen years that have passed since the initial entry of judgment.

## CONCLUSION

For the reasons explained above, Mr. Albertson's motion to vacate the judgment must be denied.  The judgment is enforceable.  Dealer Services must nevertheless refrain from executing on personal or real property absent the successful revival of the ability to execute on the judgment, and, for the purpose of real estate, the judgment lien.  This process (1) provides full faith and credit to the domesticated judgment, (2) while simultaneously treating that judgment "in the same manner as a judgment of the Superior Court of this State . . subject to the same procedures, defenses, and proceedings . . . [and enforcing it]. . . in [a] like manner."[52]

**IT IS SO ORDERED.**

Very truly yours,

/s/ Jeffrey J Clark
Resident Judge

---

[52] 10 *Del. C.* § 4782